**UNITED STATES ex rel. KLEIN v. MULLIGAN, Acting United States Marshal.**

No. 368.

Circuit Court of Appeals, Second Circuit.

June 25, 1931.

See also 46 F.(2d) 85.

D. Basil O'Connor, of New York City (Arnold T. Koch, of New York City, of counsel), for appellant.

Edward H. Lockwood, of New York City (Thomas Gregory, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Upon complaint of the British consul general at New York, the appellant, Arthur J. Klein, a British subject sought as a fugitive from justice, was arrested on December 27, 1930, and, after a hearing before a United States commissioner, was committed to the custody of the marshal to await the receipt of an extradition warrant from the Secretary of State. The complaint and warrant of arrest charged that on specified dates during the year 1930 Klein had received in the city of London, England, from Harry Wise, who passed under many aliases, two sums of money aggregating £250,000, and other specified sums from a corporation named Broad Street Press Limited, "knowing the same to have been fraudulently obtained." An information supported by depositions charging receipt of the same sums, "knowing

the same to have been obtained under circumstances which amount to a misdemeanor, to wit, conspiracy to defraud, in each case contrary to section 33 (1) of the Larceny Act, 1916," had been lodged against Klein in London on December 10, 1930, and forthwith a warrant of arrest thereon had been issued. This is the charge upon which the extradition proceedings must be supported, although the record also shows two earlier British informations and warrants against Klein. Copies of the British documents, duly authenticated, were received in evidence on behalf of the demanding government upon the hearing before the United States commissioner. Klein offered no evidence whatever. The commissioner having ordered him committed, he sued out writs of habeas corpus and certiorari, which the District Judge dismissed after a hearing. This appeal followed.

■■■ Under the Treaty of 1842 (8 Stat. 572, 576) as amended in 1889 (26 Stat. 1508, 1509), the crime of "receiving any money, * * * knowing the same to have been embezzled, stolen, or fraudulently obtained" is an extraditable offense. The treaty (article 10) also provides that extradition may be had only "upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offence had there been committed." The acts charged against Klein are a crime under the laws of the state of New York (N. Y. Penal Law [Consol. Laws N. Y. c. 40] § 1308) as well as in England, and since they are also an extraditable offense under the treaty, commitment for extradition was proper, provided there was evidence to warrant a finding of reasonable ground to believe the accused guilty. Glucksman v. Henkel, 221 U. S. 508, 512, 31 S. Ct. 704, 55 L. Ed. 830; Collins v. Loisel, 259 U. S. 309, 312, 42 S. Ct. 469, 66 L. Ed. 956; Fernandez v. Phillips, 268 U. S. 311, 312, 45 S. Ct. 541, 69 L. Ed. 970. The authorities just cited also make clear that competent evidence to establish reasonable ground is not necessarily evidence sufficient to convict, nor only such as can pass technical rules governing the admissibility of evidence in criminal trials.

■■■ For purposes of this appeal Klein admits his receipt of the several sums of money which he is charged with receiving, but he contends that the evidence is insufficient to establish reasonable ground for believing that Wise or the Broad Street Press obtained the money fraudulently, or, if they did, that he had knowledge of it. All the money received by Klein came from the Broad Street Press, for the sums he received from Wise were obtained by the latter from that corporation. Broad Street Press was organized to do a stock brokerage business, and it is the claim of the demanding government that Wise and his confederates used this corporation as a tool to defraud investors who were induced to purchase stocks through it. It published a weekly financial paper which the District Court aptly characterized as a "tipster sheet," and its method of attracting clients was the familiar one of "baiting" its victims by allowing them to make a profit on their initial dealings and then inducing them to invest in unlisted and worthless stocks of three companies which were controlled by persons charged to be confederates of Wise. The depositions of Stacy, Hedley, Turner, and Cockrane relate the experiences of four such victims, and from the deposition of Newman, an examiner in the Department of the Official Receiver in Companies Liquidation, it appears that large numbers of clients were induced to buy shares in the same worthless companies. It is urged that there is a complete failure of proof as to the worthlessness of the shares, since the only evidence thereof is hearsay. This contention is without merit. By virtue of the Act of August 3, 1882 (18 USCA § 655), the depositions taken in England, and properly authenticated were competent evidence. Indeed, the objection urged is not to their reception in evidence but to the sufficiency of what they contain. The hearsay character of a statement is of course a factor to be considered in determining the weight to be accorded it, but that is as far as the hearsay objection goes in a proceeding like the present. See Collins v. Loisel, 259 U. S. 309, 317, 42 S. Ct. 469, 66 L. Ed. 956; 1 Wigmore, Evidence (2d Ed.) p. 21. Newman, an official examiner, deposed that the government brokers with whom he had been in communication reported to him that the shares were entirely worthless. This is enough on the issue of probable cause. Without going into further details, it will suffice to say that we consider the evidence ample to furnish reasonable ground for believing that Broad Street Press was a fraudulent enterprise and that a part, if not all, of the money in its bank account which Klein received directly or through Wise was money which it had fraudulently obtained.

Likewise there is good reason to believe that Klein had knowledge of the fraudulent character of the enterprise and realized the

taint attaching to the money he received from it. He was intimate with Wise, a man of many aliases and apparently the ring leader; he frequently consulted with him at the corporation's office, occupied its "Board Room," appeared to one of its clerks to be taking an active part in the conduct of its business and in the correspondence, and finally received more than a million dollars of the company's money just before it ceased business, which money he transferred by cable to New York, where he himself arrived shortly thereafter.

It is urged that the evidence, if enough to establish probable cause for believing Klein guilty of any crime, shows Klein to have participated in the conspiracy to defraud investors to such an extent as to make him a principal in the conspiracy rather than a receiver of money fraudulently obtained by others. It may be conceded arguendo that a conspiracy to defraud is not within the extradition treaty (see Ex parte Greene, 7 Can. Cr. C. 389; United States v. Gaynor, [1905] A. C. 128); but that is not the crime upon which Klein's extradition is sought. It may also be conceded that one who is proved guilty of obtaining property by theft or fraud cannot be convicted as a "receiver" of the property so obtained, but the courts are far from agreement as to what degree of participation will preclude a confederate of a thief from being held as a receiver. See Smith v. State, 59 Ohio St. 350, 52 N. E. 826; Weisberg v. United States, 49 App. D. C. 28, 258 F. 284; People v. Romanelli, 197 App. Div. 876, 189 N. Y. S. 902, 903; Reg. v. Smith, 6 Cox C. C. 554. Cf. Reg. v. Coggins, 12 Cox C. C. 517. In New York it is apparently not enough for a defendant charged as a receiver to show merely that he might have been indicted as a principal to the larceny by virtue of a statute making all accessories principals. People v. Rivello, 39 App. Div. 454, 57 N. Y. S. 420. Whether the decision just cited represents the present law of this state we need not now determine; nor need we attempt to ascertain the exact confines of the doctrine under English law. In the case at bar the question is not whether Klein can successfully establish this alleged defense upon a trial in England, but whether the commissioner had probable cause to believe him guilty of the crime charged. The contention that he was shown to be a conspirator and not a receiver is based on the unwarranted assumption that the record so clearly demonstrates Klein's active participation in the fraud as to make it wholly unreasonable to

believe that he was the recipient of the fruits of a fraudulent scheme carried out by others. It does not. From the evidence before him, we think the commissioner was justified in finding, as we may assume from his order of commitment that he did find, reasonable ground for believing that Klein received the money with knowledge of the fraud but without being himself an active participant in its perpetration.

Accordingly the order appealed from should be, and is, affirmed.